Matter of Hirschhorn (2020 NY Slip Op 01061)





Matter of Hirschhorn


2020 NY Slip Op 01061


Decided on February 13, 2020


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
JEFFREY A. COHEN, JJ.


2017-12742

[*1]In the Matter of Andrew Hirschhorn, an attorney and counselor-at-law. Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, petitioner; Andrew Hirschhorn, respondent. (Attorney Registration No. 2383446)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts. By decision and order on motion of this Court dated May 24, 2018, the Grievance Committee was authorized to institute and prosecute a disciplinary proceeding against the respondent. The Grievance Committee served and filed a notice of petition and a verified petition both dated June 29, 2018, and the respondent served and filed a verified answer dated August 13, 2018. Pursuant to 22 NYCRR 1240.8(a)(2), the parties filed a joint stipulation of disputed and undisputed facts. By decision and order on application dated October 1, 2018, the issues raised were referred to Roger Bennet Adler, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on January 30, 1991.



Diana Maxfield Kearse, Brooklyn, NY (David W. Chandler of counsel), for petitioner.
Victor Knapp, Kew Gardens, NY, for respondent.



PER CURIAM.


OPINION & ORDER
The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts served the respondent with a verified petition dated June 29, 2018, containing five charges of professional misconduct. The respondent served and filed a verified answer dated August 13, 2018, admitting the allegations of the petition and setting forth mitigating circumstances. After preliminary conferences held on October 25, 2018, and November 28, 2018, and a hearing conducted on January 4, 2019, the Special Referee submitted a report dated February 14, 2019, in which he sustained all charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent cross-moves to modify the report of the Special Referee with respect to certain findings, to confirm the Special Referee's report as so modified, and to impose such discipline as the Court deems just and proper.
The Petition 
Charge one alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:
At all times relevant to this petition, the respondent maintained an IOLA account at [*2]Bank of America, with an account number ending in 7997, entitled "Andrew J. Hirschhorn Esq P.C. IOLA Attorney Trust Account" (hereinafter the escrow account).
On February 29, 2016, the respondent deposited a personal injury settlement on behalf of his client Andre Rucker in the amount of $12,500 into his escrow account. On or about March 7, 2016, the respondent issued escrow account check number 11044 in the sum of $7,053.33 to Rucker, as payment of Rucker's portion of the settlement. Prior to Rucker presenting this check for payment, the balance in the respondent's escrow account fell below $7,053.33, as follows:
Date Balance 
8/8/16 $4,592.68
8/15/16 $477.68
On August 23, 2016, Rucker presented check number 11044 for payment, but it was returned due to insufficient funds in the respondent's escrow account.
Charge two alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:
On June 14, 2016, the respondent deposited a personal injury settlement on behalf of his client Phylecia Harris in the amount of $40,000 into his escrow account. On or about June 20, 2016, the respondent issued escrow account check number 11530 in the sum of $648.55 to "The Centers for Medicare & Medicaid Services," as payment for expenses owed by Harris. Prior to this check being presented for payment, the balance in the respondent's escrow account on August 15, 2016, had fallen below $648.55 to only $477.68. On August 23, 2016, check number 11530 was presented for payment, but it was returned due to insufficient funds in the respondent's escrow account.
Charge three alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:
Between February 1, 2016, and November 30, 2016, on multiple occasions, the respondent issued funds to his clients from his escrow account in amounts exceeding those to which they were entitled. During this time period, on multiple occasions, the respondent issued funds to himself from his escrow account, as legal fees, in amounts exceeding those to which he was entitled. The excess payments to the clients and to the respondent cleared against funds of the respondent's other clients.
Charge four alleges that the respondent commingled personal funds with funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:
Between February 1, 2016, and November 30, 2016, the respondent deposited funds entrusted to him as a fiduciary, incident to his practice of law, into his escrow account. During this time period, the respondent allowed personal funds, in the form of earned legal fees, to remain in his escrow account.
Charge five alleges that the respondent failed to timely file retainer and closing statements with the Office of Court Administration in connection with his clients' personal injury matters, in violation of rule 8.4(d) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:
Between June 24, 2015, and February 9, 2016, the respondent entered into retainer agreements with the following eight individuals to represent them on their personal injury matters: (1) Kimberly Butts; (2) Khaleel Williams; (3) Sean Johnson; (4) Pierre Olda; (5) Jaqueline Barnes; (6) Tyrone Stevens; (7) Eileen Hines; and (8) Manisha Sharma. With respect to these clients, the respondent failed to timely file retainer statements with the Office of Court Administration within 30 days of being retained, as required by 22 NYCRR 691.20(a).
In or about 2016, the respondent received settlements in relation to the foregoing personal injury matters, but he failed to file closing statements with the Office of Court Administration within 15 days of receiving the settlements, as required by 22 NYCRR 691.20(b). The respondent filed the closing statements on October 12, 2017, well after the commencement of an investigation in October 2016 by the Grievance Committee.
The Hearing Evidence 
The charges in the petition stem from an investigation by the Grievance Committee following notice from the Lawyers' Fund for Client Protection that two of the respondent's escrow [*3]account checks were dishonored. Specifically, on August 23, 2016, the escrow checks issued to the respondent's client Rucker and to pay a Medicare lien on behalf of his client Harris were dishonored. A few days later, the respondent learned that one of those checks had been dishonored. He thought this may have occurred because of prior check fraud activity, as well as possible bookkeeping errors. The next day, the respondent deposited personal funds in the sum of $60,000 into the escrow account to cover any possible shortage. Later in the week, the respondent learned of the second dishonored check. He immediately gave both payees replacement checks and paid any costs associated with the returned checks.
Thereafter, the respondent had the escrow account audited by an accountant. The audit revealed, among other things, that the respondent had overpaid either himself or a client in multiple matters, resulting in the misappropriation of client funds and an escrow account shortage. The respondent claims that the overpayment errors resulted from carelessness, gaps in the issuance of checks, lack of immediate availability of check stubs and/or check copies, and checks being drafted by himself and his bookkeeper, rather than only one individual. During this time period, the respondent was also distracted by internal office issues with employees.
As to the check fraud, the respondent testified that he first became aware that fraudulent checks had been presented and paid from his escrow account in late summer of 2015. Specifically, in September 2015, 10 checks totaling $5,539.05 were presented against the escrow account. The respondent visited the bank and, thereafter, spoke repeatedly with bank managers, trying to protect against future fraud and also to obtain reimbursement for the funds removed from the account. He did not close or cease using the escrow account. The respondent also filed police reports with the Nassau County Police Department and the New York City Police Department. Nevertheless, fraudulent checks continued to be presented against the respondent's escrow account, as follows: in November 2015, 7 checks totaling $6,470; in May 2016, 6 checks totaling $5,940; in June 2016, 12 checks totaling $3,103.08; and in September 2016, 3 checks totaling $3,957.20. Accordingly, from September 2015 through September 2016, the sum of $25,009.33 was removed from the respondent's escrow account by virtue of fraudulent check activity. Of that amount, the respondent was reimbursed the sum of $9,897.20 by Bank of America. In September 2017, the respondent, by counsel, commenced an action against Bank of America for the unrecovered funds, totaling $15,112.13. In November 2018, the respondent settled that action for $8,000.
While the respondent was awaiting reimbursement from Bank of America, he attributed, in his records, the amount removed by the fraudulent checks to what he called a "suspense account." The respondent testified that he included the fraudulent check amount in the escrow account balance, which "created a false, artificially-inflated balance, and that in turn hid the double payments" that had caused an escrow account shortage.
In an effort to address his mistakes, the respondent, among other things, instituted remedial measures, including ensuring sufficient funds were returned to the escrow account, switching to an IOLA account at TD Bank in or about October 2016, hiring an accountant to assist him in the future to ensure that the IOLA account at TD Bank is properly maintained, educating himself on the proper handling of an escrow account, and hiring additional staff to assist him in case and file management.
The Report of the Special Referee 
The Special Referee submitted a report dated February 14, 2019, sustaining all charges. In relevant part, the Special Referee found that the respondent did not deny or dispute the charges, but asserted that he "was a victim of a support staff which was alternately professionally and ethically challenged." The Special Referee stated that the respondent's employees "all too often perceived employment as access to the financial information needed to steal." Further, the Special Referee noted that the respondent "was so focused on the law side' of a busy practice that he allowed the business side' to slide, and be addressed with the assistance of unfaithful employees in business for themselves, and for whom [r]espondent's clients were a mark' to be exploited to achieve their financial needs and desires." The Special Referee stated that "[a]t the end of the day,' [the respondent] invited these spies into his camp, and set the proverbial stage for the thievery and financial chaos which ensued."
Findings and Conclusion 
The Grievance Committee now moves to confirm the report of the Special Referee and to impose such discipline as the Court deems just and proper. Subsequently, the Grievance Committee reported that the respondent's disciplinary history includes a Letter of Caution. The [*4]respondent, by counsel, cross-moves to modify the report of the Special Referee with respect to certain findings, to confirm the Special Referee's report as so modified, and to impose such discipline as the Court deems just and proper. Although the respondent has admitted the charges, he seeks to modify the findings of the Special Referee to the extent that the Special Referee found a connection between the respondent's employees and the check fraud perpetrated against the escrow account. The respondent's counsel contends that the difficulties the respondent experienced with his staff were offered to explain the office pressures he faced during this time period, and not to suggest that his employees participated in the fraudulent check activity. In this regard, we conclude that there is no evidence in the record to support a finding that the respondent's employees were the cause of the fraudulent check activity. Accordingly, to the extent that the Special Referee found otherwise, that branch of the respondent's cross motion which was to modify the Special Referee's findings in that regard is granted.
In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained all charges. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted except to the extent it seeks to confirm the Special Referee's finding that the respondent's employees were the cause of the fraudulent check activity, that branch of the respondent's cross motion which was to confirm the Special Referee's report as modified is granted, and the charges are sustained.
In this case, the record reveals that the escrow account shortfalls were the result of check fraud activity, as well as the respondent's mismanagement of the account and deficient record-keeping practices. When the check fraud first occurred in September 2015, the respondent made inquiry of his bank and sought reimbursement, but he did not cease using the escrow account and continued to place client funds at risk should the check fraud continue. Indeed, over a period of approximately one year, the respondent continued to use the escrow account, notwithstanding the occurrence, on multiple occasions, of additional fraudulent checks being presented against the escrow account. Other disbursement errors contributed to the escrow account shortfalls. After two escrow checks were dishonored in August 2016, the respondent retained the services of an accountant to audit the escrow account. The escrow account audit revealed multiple errors, including overpayments to the respondent and to clients, as well as the respondent's failure to fully remit settlement proceeds to clients. Once alerted to the errors, the respondent undertook efforts to correct the disbursement errors, and in some instances, he provided clients with interest for the period the payment was outstanding. Additionally, the respondent has admitted, as alleged in charges four and five, respectively, that he improperly commingled legal fees in his escrow account, and that he failed to timely file retainer and closing statements.
In determining an appropriate measure of discipline, the respondent's counsel requests the Court to issue, at worst, a public censure, in view of the mitigation presented, including the respondent's admission of wrongdoing; his expressed remorse; his acceptance of responsibility; the unintentional nature of the misappropriation; the remedial efforts implemented; the absence of harm to a client; and the evidence of the respondent's good character and charitable works. Notwithstanding the mitigation advanced, we find that the respondent failed to honor his obligations as a fiduciary, both in his failure to ensure that his disbursements were accurate and in permitting client funds to remain at risk after the first sign of fraudulent check activity, which lax practices resulted in the misappropriation of fiduciary funds.
Under the totality of the circumstances, we conclude that the respondent's conduct warrants his suspension from the practice of law for a period of two years.
SCHEINKMAN, P.J., MASTRO, RIVERA, DILLON and COHEN, JJ., concur.
ORDERED that the petitioner's motion to confirm the Special Referee's report is granted except to the extent it seeks to confirm the Special Referee's finding that the respondent's employees were the cause of the fraudulent check activity, and the motion is denied to the extent it seeks to confirm the Special Referee's finding that the respondent's employees were the cause of the fraudulent check activity; and it is further,
ORDERED that the respondent's cross motion to modify the Special Referee's report so as to delete the finding that the respondent's employees were the cause of the fraudulent check activity, and to confirm the Special Referee's report as so modified, is granted, and [*5]the charges are sustained; and it is further,
ORDERED that the respondent, Andrew Hirschhorn, is suspended from the practice of law for a period of two years, commencing March 16, 2020, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than September 16, 2021. In such application (see 22 NYCRR 691.11, 1240.16) , the respondent shall furnish satisfactory proof that during the period of suspension he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Andrew Hirschhorn, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Andrew Hirschhorn, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Andrew Hirschhorn, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court